IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DARCY SMITH,

      Petitioner,

v.                                     CIV 10-1132 JB/KBM

ARLENE HICKSON, Warden,
Western New Mexico Women's
Correctional Facility,

      Respondent.

## PROPOSED FINDINGS
## AND
## RECOMMENDED DISPOSITION

      THIS MATTER is before the Court on Darcy Smith's counseled petition seeking habeas relief under 28 U.S.C. § 2254. Respondent answered, and the parties submitted supplemental briefing. *See Docs. 1, 9, 10, 13, 14.* Because Petitioner filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *E.g., AbdulKabir v. Quarterman,* 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons,* 531 F.3d 1306, 1319 (10th Cir. 2008), *cert. denied,* 129 S. Ct. 2058 (2009).

      This case is particularly well-briefed both here and at the state level, and, in denying state post-conviction relief, the trial judge issued a reasoned decision. I incorporate those sources herein by reference, and I will confine my discussion below to a short overview of the background, and what I believe to be the dispositive legal analysis. All of the issues can be resolved on the present record and, therefore, the Court need not expand the record further or hold an evidentiary hearing. *E.g., Schriro v. Landrigan,* 550 U.S. 465, 475 (2007); *Sandoval v.*

*Ulibarri,* 548 F.3d 902, 915-16 (10th Cir. 2008), *cert. denied,* 130 S. Ct. 133 (2009); Rules 6-8, RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS. Having carefully considered Petitioner's claim in light of the federal record and relevant law, I recommend that her petition be denied and this action dismissed with prejudice.

## I. Background

Petitioner is serving a life sentence following her conviction for first-degree murder and false imprisonment. Two others were prosecuted separately and also convicted of participating in the crime. One of them resided with Petitioner at the time the crime took place, and he married her some seven months thereafter.

Paul Kennedy and Mary Han served as her trial attorneys. After the New Mexico Supreme Court affirmed her conviction, new counsel represented Petitioner in state post-conviction proceedings. Post-conviction counsel filed an amended state petition that included a claim of ineffective assistance of trial counsel. This claim asserted that trial counsel failed to investigate and to raise a "Battered Woman Syndrome" duress defense. *See e.g., State v Smith,* 130 N.M. 117, 121, 19 P.3d 254, 258 (N.M. 2001); *Doc. 1* at 1-2; *Doc. 9-4* at 11-21; *Doc. 9-6* at 29. According to Petitioner, the trial attorneys should have argued that Petitioner's actions on the night of the crime were taken under duress as she was the victim of her husband's constant physical and emotional abuse.

Trial judge Edmund H. Kase III held a series of evidentiary hearings where trial counsel testified. *See Doc. 9-7* at 4, 7. His written findings identified the *Strickland* two-prong test for a violation of the Sixth Amendment due to ineffective assistance of counsel. *See Doc. 9-7* at 22 (hereinafter "*Findings*"); *see also Strickland v. Washington,* 466 U.S. 668 (1984). That is, "counsel's performance fell below an objective standard of reasonableness *and* that the deficient performance prejudiced the defense." *E.g., Byrd v. Workman,* ___ F.3d ___, 2011 WL 2084204

at *6 (10th Cir. 5/27/11) (emphasis original; internal quotations and citations omitted).  Judge Kase also credited trial counsel's evidentiary hearing testimony.  He found that, while trial counsel were aware of Petitioner's background of abuse, they concluded raising a duress defense would have been imprudent under the circumstances.  *See Findings* at 2-5.  He found counsel's decision to be objectively reasonable, and did not discuss whether counsel's actions amounted to prejudice under the second *Strickland* prong.  *See id.* at 5-8.

## II.  AEDPA Standards & Sole Federal Claim

Three primary AEDPA provisions govern the standard for federal habeas review.  Where, as here, a state court denies a claim on the merits, a federal court cannot grant habeas relief unless the state decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).  Factual determinations made by a state court are presumed to be correct unless the Petitioner can rebut them by clear and convincing evidence.  *See id.,* § 2254(e)(1).

In the federal petition and briefing, habeas counsel makes a clear and focused argument. *See Docs. 1, 13.*  Petitioner does not challenge Judge Kase's factual determinations under §§ 2254(d)(2) or § 2254(e)(1).  Likewise, Petitioner does not assert that Judge Kase's decision was "contrary to" clearly established law under § 2254(d)(1).  Instead, Petitioner bases her sole claim for habeas relief under § 2254(d)(1), arguing that Judge Kase's decision was an "unreasonable application" of *Strickland.  See Doc. 1* at 5 ("The State District Court's decision in this matter represents an unreasonable application of federal law.").

Petitioner bears a heavy burden because "[a]s the Supreme Court has recently underscored, AEDPA imposes a 'highly deferential standard for evaluating state-court rulings

. . . one that demands that state-court decisions be given the benefit of the doubt." *Byrd*, 2011 WL  at *5 (internal quotations and citations omitted).  Therefore, in reviewing Judge Kase's application of *Strickland,* this Court may not substitute its own judgment or grant habeas "simply because" it independently believes Judge Kase "applied the law erroneously or incorrectly." *Id.* (same).  Rather, "AEDPA's conception of objective unreasonableness lies somewhere between clearly erroneous and unreasonable to all reasonable jurists." *Id.* at *9 (same).

For ineffective assistance of counsel claims, the *Strickland* two-prong test constitutes the clearly established law under § 2254(d)(1).  *Id.* at *8.  Judge Kase made his decision based on the first prong only, which itself is a "highly deferential" review of counsel's performance, even without the overlay of the AEDPA standards.  *Id.* at *6.  "In other words, [this Court will] defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client." *Id.* (internal quotations and citations omitted).  Judge Kase did not make a decision on *Strickland*'s prejudice prong, and "if there has been no state-court adjudication on the merits [the AEDPA] deferential standards of review do not apply." *Id.* at *5 (same).  However, "[c]ourts are free to address these two prongs in any order, and failure under either is dispositive." *Id.* at *6.

## III.  Analysis

Petitioner's argument is based on a very narrow set of facts.  She asserts that "trial counsel admitted during the evidentiary hearing . . . they never consulted with any expert concerning [Battered Woman Syndrome] in general, or its effect on [her] mental state in particular," and that "trial counsel never consulted with [her] mental health care provider concerning the effects that prolonged abuse had on her mental state." *Doc. 1* at 4, ¶¶ 19, 20.  "Instead, trial counsel made a series of decision[s] which were, in whole or in part, affected by their lay perceptions concerning [her] mental state, demeanor, and affect." *Id.,* ¶ 21.

Petitioner argues that because "[i]t is undisputed . . . that trial counsel failed to conduct any independent investigation whatsoever into [her] mental state," *Doc. 13* at 2, counsel behaved "unreasonably, and no "reasonable argument" can be made to justify counsel's decision, *id.* at 4-5, 8. She therefore maintains that Judge Kase unreasonably applied federal law, and she is entitled to habeas relief. *Id; see also Doc. 1* at 5-7. Aside from citations to general habeas and ineffectiveness principles, in specific support, Petitioner relies on *Harrington v. Richter,* ___ U.S. ___, 131 S. Ct. 770 (2011), *Bullock v. Carver,* 297 F.3d 1036 (10th Cir.), *cert. denied,* 537 U.S. 1093 (2002), *Fisher v. Gibson,* 282 F.3d 1283 (10th Cir. 2002), and commentary the American Bar Association Standard For Criminal Justice 4-4.1 concerning investigation of a defendant's mental state. *See Doc. 1* at 5-7; *Doc. 13* at 5-6.

Even if the Court accepts as true that counsel made no "independent" investigation, Petitioner is not entitled to habeas relief. Foremost, the Supreme Court has made it very clear that the ABA standards are not conclusive of the reasonableness inquiry under *Strickland*'s first prong.[1] While the standards are "guides" and "may be valuable measures of the prevailing

---

[1] Petitioner was arrested in 1993 and tried in 1994. *E.g., Smith,* 130 N.M. at 121, 19 P.3d at 258. The ABA "duty to investigate" standard enacted in 1993 provides in part that defense counsel:

> should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

ABA Standards For Criminal Justice, PROSECUTION FUNCTION AND DEFENSE FUNCTION 4–4.1(a) (3rd ed. 1993). The paragraph that contains the commentary Petitioner relies upon provides in full:

> The lawyer's duty to investigate is not discharged by the accused's admission of guilt to the lawyer or by the accused's stated desire to enter a guilty plea. The accused's belief that he or she is guilty in fact may often not coincide with the elements that must be proved in order to establish guilt in law. ***In many criminal cases, the real issue is not whether the defendant performed the act in question but whether the defendant had the requisite intent and capacity.*** The accused may not be aware of the significance of facts relevant to intent in determining criminal responsibility. Similarly, a well-founded basis for suppression of evidence may lead to a disposition favorable to the client. The basis for evaluation of these

professional norms," they are not "inexorable commands." *Padilla v. Kentucky,* 130 S. Ct. 1473, 1482 (2010) (internal quotations omitted) (quoting *Strickland,* 466 U.S. at 688, and *Bobby v. Van Hook,* 558 U.S. \_\_\_, \_\_\_, 130 S. Ct. 13, 16 (2009) (per curiam)); *Bobby,* 130 S. Ct. at 17 ("*Strickland* stressed, however, that 'American Bar Association standards and the like' are 'only guides' to what reasonableness means, not its definition.") (quoting *Strickland,* 466 U.S. at 688).[2]

One key factual finding Judge Kase made was that Petitioner's attorneys had frequent contact with [her] throughout their preparation for the defense strategy for trial," *Findings* at 2, ¶ 3, where "Petitioner advised her trial attorney that ***she took no active role*** in the crimes committed," *id.* at 4, ¶ 17 (emphasis added). Another key factual finding was that Petitioner's trial attorneys were clearly cognizant of the basis for a Battered Woman Syndrome defense. For example, Judge Kase concluded that "Petitioner's trial attorneys . . . ***were very much aware of the incidents of abuse*** committed by [Petitioner's husband] against [her]." *Id.* at 2, ¶ 3 (emphasis added). Indeed, the record shows that trial counsel personally conducted an interview with one of Petitioner's roommates, who mentioned the domestic violence between Petitioner and her husband. But it should be noted that this person also told counsel that Petitioner "egged him on constantly," telling her husband to " 'Come on. Hit me. Hit me.'" And when people tried to intervene, Petitioner "would get mad at you for trying to stop" her husband and "would tell you to leave her alone and let him beat on her. And she'd beat on him right back." This

---

possibilities will be determined by the lawyer's factual investigation for which the accused's own conclusions are not a substitute.

*Id.* (Commentary) (emphasis added to highlight sentence Petitioner cites).

[2] The *Padilla* decision also cites *Florida v. Nixon,* 543 U.S. 175, 191, & n. 6 (2004), *Wiggins v. Smith,* 539 U.S. 510, 524 (2003), and *Williams v. Taylor,* 529 U.S. 362, 396 (2000), as examples where the Court holds ABA standards are not binding measures of "reasonableness." *Padilla,* 130 S. Ct. at 1482.

individual reported that "the fact of the matter is, Darcy would never let anyone stop it." *See Doc. 9-5* at 21-22.[3]

A third key finding was that trial counsel "reviewed and were quite familiar with the psychological reports prepared by Dr. Moss Aubrey and by Dr. Robert Zussman," *Findings* at 2, ¶ 6, and the tape recording of the statements Petitioner made to Brian Jones in the police vehicle upon their arrest, *id.* at 4, ¶ 13. The doctors' reports and audiotape reveal unflattering conclusions about Petitioner. Judge Kase noted these in his findings, such as her "self-absorption," "a sense of being superior or special," "narcissism," "anger," "oppositionalism," "impulsivity," "resentment," "willful misperception of her environment," "thorough[] identif[cation] with the criminal subculture and its values," "callous, cavalier and disturbing" statements in the face of arrest, *id.* at 2-4, ¶¶ 7, 11, 12, 13, as well as that Petitioner strongly defended her husband and described him "as a wonderful man whom she intended to stay with [and] her anger at her parents for their disapproval of [him] because 'it makes [her] mad when people tell me what to do with my life,'" *id.* at 3, ¶ 8.

Judge Kase concluded with the factual finding that Petitioner's attorneys were "of the opinion" that if they made Petitioner's "psychological state" an issue at trial, the evidence of her psychological condition "would have created an extremely negative impression of Petitioner." *Id.* at 4, ¶ 16. Likewise, if Petitioner had testified and/or the audiotape of her statements in the police car had been introduced, her trial attorneys were "of the opinion" that her statements, affect, demeanor, and attitude toward her husband would also have created a negative impression for the jurors. *Id.*, ¶¶ 14-15. Accordingly, in light of Petitioner's position that she "took no

---

[3] Post-conviction counsel attached this interview with Jennifer Jones as "Exhibit A" to the amended state petition and Agent Michael D. Davies' interview with Brian Jones as "Exhibit B" to the amended state petition. *See Doc. 9-4* at 36-37, 41-42. In the federal record, the two interviews are comingled. *See id.* at 40-41 (jumping from counsel interview to agent interview); *id.* at 58 and *Doc. 9-5* at 1 (jumping from agent interview to counsel interview).

active role in the crimes committed," *id.*, ¶ 17, trial counsel opted for a strategy that would "challenge very element of the charged crimes and to argue that Petitioner had been merely present during the crimes . . . and . . . had not taken an active part," *id*. at 2, ¶ 5. They were

> of the opinion that admitting the elements of the crime(s), which would be necessary in a duress, or hybrid-duress, defense would have been an imprudent trial strategy and an imprudent defense; and, in any event, the trial attorneys were understandably unwilling to force Petitioner to admit to committing acts, which Petitioner denied committing, and thus suborning perjury.

*Id.* at 4-5, ¶17.

Judge Kase concluded as a matter of law that each of trial counsel's opinions, the options they weighed, and chosen strategy, were reasonable. He explained that a battered woman duress defense was not available for the first-degree murder charge and, while the defense was available for the false imprisonment charge, *id.* at 6, ¶ 6, Petitioner would have been "required . . . to admit the elements of false imprisonment and, by extension, felony murder," *id.* at 7, ¶ 11. Trial counsel were therefore reasonable to "consider how a duress defense based on battered woman's syndrome would fare in the context of this actual case . . . as opposed to simply considering whether . . . there was a legal theory available to excuse one charge." *Id.* at 7-8, ¶ 15.

Furthermore, the defense "most likely would have required Petitioner to testify in order to provide the most effective defense, *id.* at 7, ¶ 11, as well as "put Petitioner's state of mind at issue" and thereby "would have 'opened the door' to testimony and evidence regarding [her] psychological or psychiatric condition(s)," *id.* at 6 ¶ 7. It was reasonable for trial counsel "to conclude that the evidence in the psychological reports . . . would have undermined" any claim of duress, *id.,* ¶ 8, to conclude the "jurors may very well have formed a very negative impression of Petitioner" based on those reports, and to "assess the impact of Petitioner's demeanor and affect on a jury based on their extensive contact and interaction" with her, *id.* at 7, ¶ 12. As such, trial counsel acted reasonably when they decided a battered woman duress defense "would

constitute a more risky strategy in the context of the entire case," *id.,* ¶ 13, and "structure[d] their defense to preclude" having "potentially inflammatory and prejudicial statements" introduced into evidence at trial," *id.,* ¶ 14.

It is true that Judge Kase did not specifically discuss whether trial counsel failed to conduct an independent investigation into a battered woman syndrome defense. However, a failure to investigate is not *per se* "unreasonable" under *Strickland,* and whether counsel's conduct is reasonable is highly dependent on the particular circumstances of the case. As habeas counsel recognizes, *Strickland* holds that:

> a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
>
> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and **strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.** In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. ***And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.*** In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Strickland,* 466 U.S. at 690-91 (emphasis added); *see also* Doc. 13 at 2 (citing portions of the above quotation).

Thus, in a capital case where defense counsel did not call the psychiatrist who diagnosed the defendant with an antisocial personality disorder to testify during the penalty phase, five members of the Supreme Court held the Ninth Circuit was wrong to conclude that *Strickland* and other Supreme Court decisions either " impose a constitutional duty to investigate" or hold it is "*prima facie*" ineffective for counsel to abandon an investigation of the defendant's background "after having acquired only rudimentary knowledge of his history form a narrow set of sources." *Cullen v. Pinholster,* ___ U.S. ___, 131 S. Ct. 1388, 1406 (2011) (Part III.C.2) (Thomas, J., opinion of the court, joined by Chief Justice Roberts, and Justices Scalia, Kennedy, and Alito). Citing its recent decision in *Richter,* these five Justices observed that "[i]t is 'rare' that constitutionally competent representation will require "any one technique or approach.'" *Id.* at 1407 (quoting *Harrington v. Richter,* ___ U.S. ___, ___,131 S. Ct. 770, 779 (2011)); *see also* Doc. 13 at 4-6. Even Justice Sotomayor and those who joined her in dissent citing the ABA standard Petitioner urges here nonetheless, like the other five Justices, recognized the strong

presumption under *Strickland* that counsel's conduct was reasonable, that federal habeas review is doubly deferential under *Strickland,* and that the ABA standard is not "dispositive." *Id.* at 1426-28 (dissent, Part II, joined by Justices Ginsburg and Kagan).

The five-member majority considered the approach taken by Justice Sotomayor in her dissent as "flatly inconsistent with *Strickland*'s recognition that '[t]here are countless ways to provide effective assistance in any given case" [and] [t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus 'mak[ing] particular investigations unnecessary." *Id.* (quoting *Strickland,* 466 U.S. at 689 and *id.* at 691, respectively). They believed Justice Sotomayor substituted her own belief about what would have been prudent under the circumstances. As noted at the outset, such an approach is impermissible under applicable AEDPA standards.

The dissent faulted the majority for making a "post hoc' rationalizations" about what counsel decided as a "strategy," even though "available evidence" contradicted those conclusions. *Id.* at 1426 ("surmises," "conjectures," "explanations"); *see also id.* at 1426, 1429 ("that counsel had in fact prepared a mitigation defense, based primarily on isolated entries in counsel's billing records, requires it to assume that [counsel] was lying to the trial judge" when he stated "that he was unprepared to present any mitigation evidence"). In contrast, here the record here contains Judge Kase's clear factual findings and Petitioner does not challenge them.

In noting that trial counsel were aware of the basis for a battered woman defense and in explaining why their chosen course was reasonable, I cannot conclude Judge Kase misapplied *Strickland* to the facts that he found. I certainly cannot conclude that his decision can be deemed either clearly erroneous or something all reasonable jurists would find unreasonable. The Tenth Circuit decisions cited by Petitioner, decided almost a decade before the *Cullen* and *Richter* and

*Byrd* decisions cited above, do not compel a different result. To the contrary – both decisions support the recommended disposition given the facts of this case.[4]

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2254 petition be denied.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE

---

[4] *See Bullock,* 297 at 1051 ("where it is shown that a challenged action was, in fact, an adequately informed strategic choice, we heighten our presumption of objective reasonableness and presume that the attorney's decision is nearly unchallengeable. The inapplicability of these presumptions (because, for example, the attorney was ignorant of highly relevant law) does not, however, automatically mean that an attorney's performance was constitutionally inadequate. Instead, we still ask whether, in light of all the circumstances, the attorney performed in an objectively reasonable manner."); *Fisher,* 282 F.3d at 1293 (trial counsel failed to "view the crime scene and filed no discovery motions . . . discover prior to trial that the state would present testimony from Buffalo Police Detective Dove, including testimony that Mr. Fisher had made statements at the time of his arrest in which he admitted assaulting someone . . . review the transcript of [the] extradition hearing, which reveals that parts of [defendant's] statement to the police at the time of his arrest are exculpatory . . . It is also unclear whether [counsel] reviewed the police reports . . . In addition, the nature of the trial itself indicates a singular lack of preparation on Mr. Porter's part. The trial transcript reveals that throughout most of Mr. Porter's examination of witnesses, including his own client, he had no idea what answers he would receive to his questions and was not pursuing any particular strategy of defense. Rather, Mr. Porter was conducting an admittedly uninformed and therefore highly reckless "investigation" during trial.").